UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

FILED

JUN 21 2007

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
CAPE GIRARDEAU

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
)
v. ) No.
)
MUSTAFA REDZIC and ) 1:07CR00110HEA
TROY PARR, )
)
Defendants. )

## INDICTMENT

### COUNT ONE (Bribery)

The Grand Jury charges that:

A. Introduction

1.  At all times material to this indictment, the State of Missouri, through its Department of Revenue, issued driver's licenses including a standard, class F driver's license and commercial driver's licenses. Missouri regulates the issuance of these licenses, sets rules and requirements for their issuance and both employs officials and contracts with third parties to administer driver's tests and prepare appropriate paperwork documenting the issuance of licenses. This process of regulating the issuance of drivers licenses, and the integrity of each license, is essential to the economic welfare and public safety of Missouri and is therefore, a matter worth more than $5,000.00 to the State of Missouri.

2.  At all times material to this indictment, defendant Troy Parr ("Parr") was a driver's license examiner certified by the State of Missouri and employed at a testing facility doing business under various names at 315 Lynual in Sikeston, Missouri area within the Eastern

1

District of Missouri. In this capacity Parr was responsible for, among other things, administering driver's license examinations to those seeking such licenses and supervising other testers, determining whether applicants qualified for such licenses and preparing the appropriate paperwork to memorialize the foregoing tests and results. At all relevant times, Parr conducted examinations or supervised the examination of those seeking Commercial Drivers' Licenses ("CDLs") at the aforementioned Sikeston facility. CDLs are required for those driving large trucks.

3.  At all times material to this indictment, the defendant Mustafa Redzic ("Redzic") was a resident of St. Louis, Missouri who ran a driver education business. This business was worth in excess of $5,000.00 to the defendant.

4.  Beginning on or about January 1, 2004 and continuing to on or about April 21, 2005, with the exact dates unknown to this Grand Jury, Redzic developed a relationship with Parr such that he would send his customers to Parr's testing facility in Sikeston (the "testing facility") in expectation that they would receive "short tests" for their commercial drivers licenses. That is, Redzic could and did expect that his customers would receive a much less rigorous test than is proper under Missouri standards. For example, Parr's tests of Redzic's customers would take approximately one half hour when a proper examination should take approximately two hours. Also, multiple students often took the same "short test" at once.

In exchange for this favorable treatment, Redzic agreed to pay Parr's facility the maximum fee authorized. Redzic was also willing to send his students on a two-hour one-way trip, past numerous other accredited testers, to receive such favorable treatment. Parr benefitted by the steady stream of business and Redzic benefitted from the nearly 100% success rate his students enjoyed testing at Parr's facility.

2

Redzic also invited Parr to St. Louis on numerous occasions where Parr would "consult" with Redzic on his drivers' education operation in St. Louis. Redzic would cover Parr's expenses on these trips as well as provide Parr with a cash payment. Sometimes these cash payments were for a few hundred dollars, sometimes they were several hundred dollars and on one occasion Redzic paid Parr two thousand five hundred dollars. All the cash payments were made in consideration of and as a reward for the favorable treatment Parr extended to Redzic's clients at the Sikeston facility. In addition to cash payments, Redzic promised to eventually hire Parr as the director of his drivers' education facility in St. Louis and promised Parr he would share in its considerable profits. These promises were likewise made in consideration of and as a reward for the favorable treatment Redzic's clients received from Parr. During this process, Redzic paid Parr bribes in excess of $5,000.00.

5.      For example, on or about February 25, 2005, Redzic gave Parr a cash payment in exchange for and as a reward for the favorable treatment his clients received from Parr. After they had passed their examinations at Parr's facility, Redzic's clients could obtain more lucrative employment open to commercial drivers and, therefore, a CDL was worth in excess of $5,000.00 to Redzic's clients.

6.      Between on or about January 1, 2004 and April 21, 2005 Redzic obtained approximately six hundred licenses for his clients through Parr according to this arrangement for which he paid Parr in excess of $5,000.00 in bribes. Redzic, through his company Bonsa Truck Driving School earned approximately $1,800,000.00 in tuition from those six hundred clients.

7.      At all relevant times material to this indictment:

    a. The State of Missouri received federal assistance in excess of $10,000 per year during 2004 and 2005.

3

b. Troy Parr was an agent of the State of Missouri, in that he served as a drivers license examiner for the state. In that capacity, Parr was empowered to conduct drivers license examinations and declare applicants for drivers licenses either successful or unsuccessful. Successful applicants were awarded driving privileges by the State of Missouri.

B. Offense Conduct

8. On or about the February 25, 2005 in the Eastern District of Missouri, the defendant,

**MUSTAFA REDZIC,**

did knowingly and corruptly give, offer and agree to give something of value, to wit: cash payments, interests in his business and employment by his business, to another, intending to influence or reward the issuance of a drivers licenses to his clients, said licenses having a value of $5,000 or more to the State of Missouri, the defendant and the applicant.

In violation of Title 18, United States Code, Section 666(a)(2).

**COUNT TWO** (Conspiracy)

A. Introduction

9. The allegations set forth in paragraphs 1 through 8 are hereby incorporated by reference.

B. The Conspiracy

10. Beginning on or about January 1, 2004 and continuing until on or about April 21, 2005, with the exact dates unknown, within the City of St. Louis and Scott County within the Eastern District of Missouri and elsewhere,

**MUSTAFA REDZIC and
TROY PARR**

and others known and unknown to the Grand Jury did knowingly combine, conspire, confederate and agree with each other to commit certain offenses against the United States, as follows:

a. To knowingly devise a scheme and artifice to defraud and to obtain monies and property by means of false or fraudulent pretenses, representations, or promises and in executing the scheme and artifice to defraud did use the United States mails in violation of Title 18, United States Code, Section 1341;

b. To knowingly devise a scheme and artifice to defraud and to obtain monies or property by means of false or fraudulent pretenses, representations or promises and to execute said scheme and artifice to defraud by means of the transmission of wires, writings, signs and signals in violation of Title 18, United States Code, Section 1343;

c. To knowingly and corruptly give something of value to a state official intending to influence and reward said state official with respect to a matter exceeding $5,000.00 in violation of Title 18, United States Code, Section 666.

C. Means and Methods

11. The means and methods by which the conspiracy was sought to be accomplished, included, among other things, the following:

a. It was part of the conspiracy that at various times, the defendants and others would arrange for a student of Redzic's truck driving school which was then known as Bosna Truck Driving School to travel from its facility in St. Louis, Missouri within the Eastern District of Missouri more than two hours past numerous other state facilities to the testing facility at which defendant Parr worked and supervised the work of other testers so that they would only have to submit to the "short tests" given at the testing facility. In one instance, Redzic persuaded defendant Parr to pass two of his students who never even showed up in Sikeston for a test.

5

b.  It was part of the conspiracy that Redzic agreed to pay the maximum fee allowed by the State of Missouri to the testing facility.

c.  It was part of the conspiracy that, after almost invariably passing Redzic's students after a "short test," Parr or another tester under his supervision would falsely complete paperwork to be mailed to the State of Missouri Department of Revenue stating that each student had submitted to and passed a full, complete, three-part Missouri CDL test and had demonstrated adequate proficiency in each essential part of the test.

d.  It was part of the conspiracy that, from time to time, Redzic would wire Parr money in and affecting interstate commerce, these payments would either be for the testing facilities' charges or for Parr personally. In any case, the wired money was in furtherance of the short testing program at the testing facility.

e.  It was part of the conspiracy that, from time to time, Redzic would make cash payments to Parr in order to influence his decision to continue "short testing" his student or reward past "short tests." Redzic would also invite Parr to visit his school in St. Louis where Redzic would promise Parr to eventually hire him as the director of the school at which time Parr would come to share in its large profits.

D. Overt Acts

12.  On or about January 21, 2005, in the Eastern District of Missouri, Redzic transmitted by a wire affecting interstate commerce $1,050.00 to the personal bank account of Parr.

13.  On or about February 25, 2005, in the Eastern District of Missouri, Redzic gave

Parr a cash payment of $2,500.00 to infuence and reward his official actions on behalf of the State of Missouri, to wit: his supervision of the "short testing" taking place at the testing facility.

14. On or about April 15, 2005, in the Eastern District of Missouri, Parr mailed and caused to be mailed to the Missouri Department of Revenue in Jefferson City, Missouri false test results for two students of Redzic, S.N. and N.B.

All in violation of Title 18, United States Code, Section 371.

## COUNT THREE (Mail Fraud)

A. Introduction

15. The allegations set forth in paragraphs 1 through 14 are hereby incorporated by reference.

16. At all relevant times, third-party testers like Parr would prepare paperwork upon completion of the testing necessary for CDL licensure in Missouri under the laws of Missouri and the United States. In the case of Parr, a Missouri Department of Revenue form 5050 would be completed and transmitted to the appropriate state office by means of the United States mails. It was Parr's practice in every case to transmit the results of his testing and any testing taking place at the facility in Sikeston, Missouri where he worked by means of the United States mail.

17. Upon receipt of the test results, the State of Missouri would then process the results and complete additional paperwork which would result in the issuance of a CDL to a particular applicant.

B. The Scheme

18. At some point unknown to the Grand Jury but no later than January 1, 2004 continuing through on or about April 21, 2005,

**MUSTAFA REDZIC, and**

7

## TROY PARR,

the defendants and others known and unknown to the Grand Jury devised a scheme and artifice to defraud the State of Missouri of money and other things of value including CDLs by means of the submission of material falsehoods and misrepresentations of material facts through the United States mails;

a.  It was part of the scheme and artifice that the defendants agreed that two of the defendant's clients known to the Grand Jury whose initials are S.N. and N.B. (referred to hereafter in this Count as the "clients") who were unable to make the two-hour trip from St. Louis to Sikeston would simply be issued CDLs without submitting to testing. It was the agreement of Parr and the defendant that this would be accomplished by Parr filling out the appropriate paperwork or causing such paperwork to be filled out as if the two clients of the defendant had actually submitted to testing and had successfully completed the testing when, in truth and fact and as the defendant and Parr well knew, the clients had not even appeared in Sikeston and had not successfully completed, or even attempted to complete, testing.

b.  It was further part of the scheme and artifice with respect to hundreds of Redzic's clients who submitted to "short tests" from January 1, 2004 through April 21, 2005, that Parr would pass Redzic's clients based only on a successful "short test" rather than a valid test. However, Parr would fill out the appropriate forms and other paperwork to be transmitted to the State of Missouri representing that all of Redzic's clients had, in fact, submitted to full testing. As both Parr and Redzic well knew, the representations of the fitness of an applicant and the soundness of the testing on each and every form submitted to the State of Missouri by Parr was false as no applicant was submitted to a full CDL test between January 2004 and April 21, 2005.

c.  The representations on the appropriate paperwork completed by Parr that the

8

clients had indeed successfully completed his testing and that the testing met the standards set forth for a comprehensive, complete test was material to the State of Missouri's decision to issue the clients CDLs which it did. Had the State known that the clients had not submitted to testing or had submitted only to a "short test," it would have not decided to issue CDLs to the clients.

C. The Mailing

19. On or about April 15, 2005 in furtherance and execution of the foregoing scheme and artifice to defraud, the United States mails were utilized to transmit the aforementioned false paperwork relating to the testing and licensure of the clients from Parr's facility in Sikeston, Missouri within the Eastern District of Missouri to the State of Missouri's Department of Revenue office at Jefferson City, Missouri.

All in violation of Title 18, United States Code Section 1341.

## COUNT FOUR (Wire Fraud)

20. The allegations set forth in paragraphs 1 through 19 are hereby incorporated by reference.

21. At some point unknown to the Grand Jury but no later than January 1, 2004 continuing through on or about April 21, 2005,

**MUSTAFA REDZIC, and
TROY PARR,**

the defendants and others known and unknown to the Grand Jury devised a scheme and artifice to defraud the State of Missouri of money and other things of value including CDLs by means of the submission of material falsehoods and misrepresentations of material facts through wires, writings, signs and signals transmitted in and affecting interstate commerce.

22. It was part of the scheme and artifice that, from time to time, Redzic would send

9

Parr cash payments, either for the testing fees charged by the testing facility or as bribes and rewards for Parr's handling of Redzic's students.

23. On or about January 21, 2005, in furtherance and execution of the foregoing scheme and artifice to defraud, wire transmissions in and affecting interstate commerce were utilized to transmit the foregoing cash payment from Redzic to Parr.

All in violaiton of Title 18, United States Code Section 1343.

## COUNT FIVE (FORFEITURE ALLEGATION)

24. The allegations set forth in Counts I, II, III and IV, in this Indictment are hereby repeated and re-alleged as if fully set forth herein for the purpose of alleging forfeiture to the United States pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461.

25. The property, real and personal, of Redzic obtained, directly or indirectly, as a result of the violation of law set out in Counts I through IV of this Indictment and which was involved in such offense, or any property traceable to such property while defendant Mustafa Redzic engaged in the criminal conduct alleged in Counts I through IV of this Indictment, is property subject to forfeiture under the provisions of Title 18, United States Code, 981(a)(1)(C) and Title 28 United States Code, Section 2461.

26. Specifically subject to forfeiture is approximately $1.8 million dollars in that such sum in the aggregate is property constituting, or derived from any proceeds the defendant obtained directly or indirectly as a result of the offense alleged in Counts I and II.

27. Properties subject to forfeiture as set out in paragraph 2 above, include, but are not limited to:

(a) Twenty-Five Thousand, Two Hundred Seventy-Two Dollars and forty-eight cents ($25,272.48) seized from Mustafa Redzic on or about April 22, 2005.

28. If any of the property described in paragraphs 26 and 27 above, as a result of any act or omission of the defendant,

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred to, sold to, or deposited with a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; and/or

(e) has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), which is incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the property described in paragraphs 26 and 27 above, or elsewhere, as being subject to forfeiture.

A TRUE BILL.

_____
FOREPERSON

CATHERINE L. HANAWAY
United States Attorney

_____
THOMAS C. ALBUS, #96250
Assistant United States Attorney