UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

UNITED STATES OF AMERICA,       )
                                )
        Plaintiff,              )
                                )
    vs.                         )        Case No. 1:07CR00110 ERW
                                )
MUSTAFA REDZIC,                 )
                                )
        Defendant.              )

## MEMORANDUM AND ORDER

In 2004, federal agents began criminal investigation into the alleged activities of Mustafa Redzic ("Defendant"). Specifically, the government was investigating Defendant's relationship with Troy Parr of Commercial Drivers Training Academy, and the fraudulent acquisition of commercial driver's licenses for Defendant's students. Defendant owns and operates Bosnia Truck Driving School, which is located at 7719 Hall Street in St. Louis, Missouri.

This matter comes before the Court on the Report and Recommendation of Magistrate Judge Lewis M. Blanton [doc. #46]. On December 17, 2007, Defendant timely filed objections to the Report and Recommendation [doc. #49]. The Report recommends that Defendant's Motion to Suppress the Contents of Any Electronic Surveillance [doc. #30], Defendant's Motion to Suppress Statements and Evidence [doc. #33], and his Supplement to Defendant's Motion to Suppress Statements and Evidence [doc. #38] be denied.[1] The Court concludes that the

---

[1] The Report also denies several other of Defendant's motions as moot, specifically, Defendant's Motion for Early Disclosure of Jencks Act Material [doc. #28], Defendant's Motion for Disclosure of Expert Testimony [doc. #29], Defendant's Motion to Disclose Intent of Government to Use 404(b) Evidence [doc. #31], and Defendant's Motion for Production of Favorable Evidence [doc. #32]. Defendant does not object to the denial of these motions, and therefore the Court will not address the Magistrate's findings on these motions.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Magistrate Judge's findings were correct, and therefore adopts the Magistrate Judge's findings of facts and conclusions of law.

## I.    LEGAL STANDARD

"[W]hen a party objects to the report and recommendation of a magistrate judge concerning a dispositive matter, '[a] judge of the court shall make a de novo review determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (quoting 28 U.S.C. § 636(b)(1)).[2] The district court has wide discretion to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## II.    DISCUSSION

## A.    SUPPRESSION OF THE CONTENTS OF ELECTRONIC SURVEILLANCE

On March 30, 2005, this Court entered an order in Case No. 4:05MC00192 ERW, which authorized the interception of wire communications occurring over a telephone bearing number (314) 583-5333 (the target telephone) for a period of thirty days. The application for this order was executed by Assistant United States Attorney Michael K. Fagan and was accompanied by an affidavit in support which was executed under oath by FBI Special Federal Officer William McDonough. Monitoring of Defendant's telephones began on March 30, 2005. On April 29, 2005, a sealing application was filed and this Court issued a formal sealing order with respect to the target telephone.

---

[2] 28 U.S.C. § 636(b)(1)(B) provides that "a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court . . ." The statute further provides that each party may file written objects within ten days of being served with a copy of the magistrate judge's report and recommendation. *Id*. at § 636(b)(1).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

### *18 U.S.C. § 2518(1)(c) Requirements*

Defendant argues that the Application for Interception of Wire and Electronic Communications ("Application") failed to comply with the requirements enumerated in 18 U.S.C. § 2518(1)(c). Specifically, the statute requires an application to include, "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). Defendant asserts that the Application demonstrated that normal investigative procedures had been effective and that normal surveillance of Defendant and the premises was possible and practicable.

A review of the Application demonstrates that the government investigated Defendant for four months, using normal investigative techniques. These techniques included physical surveillance, the placement of a pen register on Defendant's telephone, contacts with confidential informants, and the use of undercover agents.

In his affidavit, Officer McDonough stated that physical surveillance had been relatively unsuccessful due to the nature of the area. Surveillance had taken place at various times of day and night, during weekdays and weekends, but was limited to the exterior of the premises and no meetings between all of the subjects had been observed. Officer McDonough noted that the success of physical surveillance is limited by its very nature as it cannot reveal the purpose or content of any conversation. Additionally, Officer McDonough stated that the driving routes and behavior of Defendant seemed to be defensive against surveillance and made physical surveillance difficult.

While there was a pen register on Defendant's phone, a pen register encounters the same innate limitations as physical surveillance, as it will not reveal the content of a conversation, nor

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

reveal any conspiracy or criminal activities. In his affidavit, Officer McDonough explained that contacts with confidential informants had failed to produce sufficient evidence to prosecute the suspects the government believed were involved in the criminal activity. He also stated that the use of confidential informants was hampered as those who could be used as an informant were members of a fairly closely knit ethnic community in which violence and retaliation for cooperation with authorities is known to occur. Confidential informants made it clear that they would not testify and stated that they would stop giving information to the government if they believed their identities may be disclosed.

Officer McDonough also discussed the government's use of undercover agents in this investigation. He stated that they have produced valuable evidence, but had not been fully successful in determining the scope of the illegal enterprise. Due to the closed nature of the enterprise and the close ethnic nature of the Bosnia Truck Driving School, Officer McDonough felt that it would be extremely difficult, dangerous, and time consuming to penetrate the conspiracy to the level necessary to identify all of the conspirators.

Officer McDonough also discussed other potential investigative techniques that had not been used by the government, and their likelihood of success. He stated his belief that interviews would not be successful as many of the witnesses were ethnically Bosnian, with limited language skills and among whom there is an ethnic distrust of law enforcement. Subpoenas for testimony before the grand jury was discussed and rejected as such witnesses were unlikely to be credible due to their own criminal activity and because they would probably invoke their Fifth Amendment protection against self-incrimination. The government also hesitated to use search warrants as they were not convinced that a search would provide sufficient evidence to determine the full scope of the criminal activity, including identifying all co-conspirators. Additionally, a search

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

warrant was not a good option as it would alert the subjects to the existence of the government's investigation.

Officer McDonough's affidavit established that normal methods of investigation were attempted, and had various levels of success, however, none of these methods was believed to be capable of exposing the full nature and extent of the criminal activity. A wiretap may be authorized "[e]ven if conventional techniques have been somewhat successful." *United States v. Maxwell*, 25 F.3d 1389, 1394 (8th Cir. 1994). The requirements enumerated in 18 U.S.C. § 2518(1)(c) are satisfied when the full scope of an enterprise is not revealed in the course of normal investigative procedures. The Application certainly satisfied the requirement that it contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous," and the wiretap was properly ordered. 18 U.S.C. § 2518(1)(c).

### *Minimization & Pen Register*

Defendant also contends that the interceptions were not made in conformity with the Court's Order which authorized the interception of wire communications. Specifically, Defendant alleges that the interceptions were not conducted in a manner to minimize the interceptions, pursuant to 18 U.S.C. § 2518. Defendant argues both that the interception of conversations referring to Defendant were virtually continuous and uninterrupted, and that the type of interception used went beyond the scope of the Application as a pen register was installed.

Defendant's argument that the interceptions were virtually continuous and uninterrupted is not supported by the evidence. Prior to monitoring wire communications, a minimization meeting was conducted and monitoring agents were instructed on minimization. Agents were to spot monitor calls for approximately two minutes to determine whether the subject was present and

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

participating in the conversation. If the subject was engaged in conversation, interception may continue for a reasonable time, generally not in excess of two minutes, to determine whether the conversation concerned criminal activity. The minimization meeting also instructed agents on additional spot monitoring and procedures that should be undertaken depending upon participants in the conversation and the topic of the conversation. The agents monitoring the wire communications signed a statement, which declared that they had read and understood the 11-page letter concerning the minimization guidelines.

The government filed three 10-day reports which evidence the effect of the minimization procedures. All three reports state that wire communications were monitored in two shifts: from 6:00 A.M. to 3:00 P.M. and again from 3:00 P.M. to 12:00 A.M. (midnight). The number of calls that were minimized and the total percentage of completed calls that were minimized each day are detailed in the chart below.

|  | Day 1 | Day 2 | Day 3 | Day 4 | Day 5 | Day 6 | Day 7 | Day 8 | Day 9 | Day 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Calls Minimized** | 9 | 3 | 4 | 10 | 4 | 13 | 18 | 27 | 14 | 32 |
| **% of Total Calls** | 15.25% | 3.49% | 5.41% | 15.38% | 8.16% | 14.44% | 20.93% | 31.03% | 24.56% | 34.78% |

|  | Day 11 | Day 12 | Day 13 | Day 14 | Day 15 | Day 16 | Day 17 | Day 18 | Day 19 | Day 20 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Calls Minimized** | 14 | 7 | 20 | 18 | 18 | 20 | 20 | 14 | 6 | 24 |
| **% of Total Calls** | 21.21% | 11.67% | 26.67% | 19.15% | 20.93% | 25.32% | 22.22% | 18.67% | 15.38% | 30.77% |

|  | Day 21 | Day 22 | Day 23 | Day 24 | Day 25 | Day 26 | Day 27 | Day 28 | Day 29 | Day 30 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Calls Minimized** | 28 | 13 | 19 | 7 | 11 | 6 | 14 | 11 | 14 | 14 |
| **% of Total Calls** | 21.71% | 26.53% | 22.89% | 12.50% | 21.15% | 10.71% | 17.72% | 10.89% | 15.05% | 20.00% |

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

These charts refute Defendant's contention that the interception of calls was continuous and uninterrupted. Minimization took place, and the Order which authorized the interception of wire communications was not violated.

Defendant's argument that the type of interception used went beyond the scope of the application also fails. While Defendant is correct that the Application did not mention a pen register, the pen register was procured through a separate application made to United States Magistrate Judge Terry I. Adelman. This argument is simply without merit. Accordingly, Defendant' s Motion to Suppress the Contents of any Electronic Surveillance is denied.

## B.    SUPPRESSION OF STATEMENTS AND EVIDENCE

On April 22, 2005, at approximately 7:35 A.M., search warrants were executed at the residence located at 3015, 3015-A and 3017 Sidney Street in St. Louis, Missouri. These addresses are owned by Defendant. The warrants were executed by Special Agents of the Federal Bureau of Investigation, the Social Security Administration, and the Internal Revenue Service. Items were seized from both 3015-A and 3017 Sidney Street. The items seized consisted of numerous documents and a sum of United States currency. Defendant was interviewed by federal agents at his residence during the execution of the search warrant. In this interview he made several statements regarding his truck driving business and his relationship with Troy Parr and the Commercial Drivers Training Academy.[3]

On April 25, 2005, a search warrant was executed at 7719 Hall Street in St. Louis, Missouri at approximately 8:00 A.M., the address where Defendant's business is located. Twenty-three items of an evidentiary nature were seized by agents and removed from the

---

[3] Troy Parr was the manager of the Commercial Drivers Training Academy. The government claims that Defendant bribed Troy Parr and that Troy Parr gave preferential treatment to Defendant's students.

premises. These items consisted mostly of documents and business records of Defendant's business. Defendant was interviewed by federal agents during the execution of the search warrant. In this interview, he made several statements regarding his truck driving business and his relationship with Troy Parr and the Commercial Drivers Training Academy.

On May 19, 2005, Defendant was again interviewed at his place of business by federal agents and Assistant United States Attorney Michael Fagan. During this interview, Defendant was informed of the ongoing criminal investigation into his relationship with Troy Parr and the Commercial Drivers Training Academy. In the interview, Defendant made several statements to federal agents regarding those subjects. In the Supplement to Defendant's Motion to Suppress Statements and Evidence, Defendant also contests the search of a property located at 4417 Wilcox in St. Louis, Missouri. The date of this search is not provided, but the Supplement states that federal agents seized several documents from this property as well. The search of 4417 Wilcox is contested on the same grounds as the searches detailed above.

### Probable Cause for Warrant

Probable cause is defined as "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "A judicial officer who has been called upon to issue a search warrant must determine whether, in light of all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Martin*, 866 F.2d 972, 976 (8th Cir. 1989) (internal citations and quotations omitted). Defendant claims that the warrant was not supported by probable cause.

In reviewing the legality of the issuance of a search warrant, the Court reviews whether the issuing judge had a substantial basis for concluding that probable cause existed for the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

issuance of the warrant. *Gates*, 462 U.S. at 250; *Martin*, 866 F.2d at 976. A review of the sufficiency of an affidavit is not *de novo*, instead, "[a]n issuing judge's probable cause determination is entitled to substantial deference." *United States v. Durham*, 470 F.3d 727, 733 (8th Cir. 2006); *Gates*, 462 U.S. at 250.

The Court has reviewed the application for search warrant and accompanying affidavit, and finds that Judge David Noce had probable cause for the issuance of this search warrant. The affidavit is forty-one pages long, and details information received from confidential informants, confidential sources, undercover agents, Arkansas Highway patrol, and much, much more.[4] Additionally, the affidavit discusses the reliability of the information provided by the confidential informants and confidential sources. The information supplied in the affidavit to Judge David Noce demonstrated "a fair probability that contraband or evidence of a crime will be found in a particular place." *Martin*, 866 F.2d at 976. The search warrant was supported by probable cause and was validly issued.

### *Describe Business Records With Particularity*

Defendant argues that the search warrant obtained for the searches detailed above is invalid and unconstitutional as it does not specifically describe the business records sought. Defendant asserts that the warrant "merely states that it is seeking documents prepared in furtherance of [numerous specific crimes]." Defendant claims that the warrant is insufficient was it does not describe with particularity the actual items to be seized.

---

[4] The affidavit is described in copious detail in the Report and Recommendation prepared by Judge Lewis M. Blanton. The Court does not find that it is necessary to restate this information and hereby incorporates the Magistrate's description of the contents of Officer McDonough's Affidavit.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Attached to the search warrant and Officer McDonough's Affidavit is a list which details eleven categories of items to be seized. Defendant's language indicates that he is objecting to item III on the list, which fully states:

> III. Address and/or telephone books and papers or electronic storage, including cellular telephone memory, reflecting names, addresses and/or telephone numbers of associates and/or co-conspirators involved in the perpetration and furtherance of mail fraud, bribery, interstate travel or use of interstate facilities in racketeering, or the conduct of an enterprise in interstate or foreign commerce through a pattern of racketeering activity.

Contrary to Defendant's argument, this category of items and all of the categories of items in the list describe with particularity the items to be seized. This search warrant contained a sufficiently particularized description of the items to be seized, and Defendant's Motion to suppress evidence from these searches is denied.

### Miranda Warnings in a Non-Custodial Interrogation

Defendant states that he was not given *Miranda* warnings prior to the three interviews detailed above, and that he was not informed that he was not required to answer questions or that he was free to terminate the interviews at any time. Defendant asserts that any statements he made should be suppressed.

Defendant's argument fails as Defendant was not "in custody" for any of these interviews. *Thatsaphone v. Weber*, 137 F.3d 1041, 1044 (8th Cir. 1998). "*Miranda* warnings are due only when a suspect interrogated by the police is 'in custody.'" *Thompson v. Keohane*, 516 U.S. 99, 102 (1995). Whether an individual is in custody is determined through an examination of "all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994). The circumstances surrounding these interviews demonstrate that Defendant was not in custody. For none of these interviews

10

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

was Defendant placed in handcuffs, weapons were never drawn, and Defendant was not taken into custody or placed under arrest after any of the interviews.

In the first interview, Officer McDonough wished to discuss the search warrant and the criminal investigation with Defendant. Officer McDonough asked Defendant if he would like to speak out of the presence of his family, and Defendant answered affirmatively, so they went to 3015 Sidney to continue their conversation. The interview lasted between thirty and forty-five minutes. The interview was cordial, and at the end Defendant escorted the officers to his garage and unlocked the garage and the cars in the garage for the officers.

The second interview was arranged after Officer McDonough contacted Defendant by phone to set up the interview. Defendant was going to come to the FBI building for the meeting, but Defendant changed the place of the meeting to his business on Hall Street. The interview took place in Defendant's office. Defendant shut the door to the office, and the interview lasted between thirty and forty-five minutes. At no time during this interview did Defendant indicate that he did not want to talk to the officers.

The final interview, at Defendant's office on Hall Street, was again arranged after Officer McDonough contacted Defendant. The interview was characterized as a civil meeting that lasted between thirty and forty-five minutes. At the beginning of this interview Assistant United States Attorney Michael Fagan told Defendant that he was suspected of being involved in criminal activity, and at the end of the interview he told Defendant to get an attorney.

The facts demonstrate that Defendant was not in custody for any of these interviews. They occurred in places in which Defendant was comfortable, Defendant agreed to all of the interviews, there were no threats, he was not handcuffed, and no weapons were ever drawn. The facts are similar to those in *Thatsaphone* in which the "defendant came to the brief meeting

11

voluntarily, was not arrested, and left without police hindrance" and accordingly, the defendant was found to have not in custody during the interrogation. *Thatsaphone*, 137 F.3d at 1044. Similarly, Defendant was not "in custody" for any of these interviews, and *Miranda* warnings did not have to be read to Defendant. The Court finds that his statements are admissible in evidence and Defendant's Motion to suppress his statements from these interviews fails.

## III. CONCLUSION

Defendant's complaints regarding the interception of wire communications fail as the Application complied with the requirements enumerated in 18 U.S.C. § 2518(1)(c), interceptions were properly minimized, and as the pen register was in place through a separate application. Defendant's arguments regarding the search warrant fail as the description of the items to be seized was sufficiently particularized, and probable cause was present. Finally, the Court finds that Defendant was not in custody during any of the three interviews and that *Miranda* warnings were not required.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Suppress the Contents of Any Electronic Surveillance [doc. #30] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Statements and Evidence [doc. #33] is **DENIED.**

**IT IS FURTHER ORDERED** that the Supplement to Defendant's Motion to Suppress Statements and Evidence [doc. #38] is **DENIED.**

Dated this <u>14th</u> Day of <u>January</u>, 2008.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com